# United States District Court    Sealed

## SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | **CRIMINAL COMPLAINT** |
| v. | |
| ABDULMUHIMN ABULSEIN | CASE NUMBER: 1:17-mj-0305 |

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. In or about 2015, the defendant Abdulmuhimn Abulsein did commit:

Count One: Making materially false statements to the Government; in violation of Title 18 United States Code, Section 1001;

Count Two: Fraud and misuse of visas, permits, and other documents; in violation of Title 18 United States Code Section 1546.

I further state that I am a Special Agent, and that this complaint is based on the following facts:

### SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.

_____
Special Agent Matt Hall, HSI

Sworn to before me, and subscribed in my presence

April 27, 2017                                     at   Indianapolis, Indiana
Date

Mark J. Dinsmore, U.S. Magistrate Judge
_____
Name and Title of Judicial Officer           Signature of Judicial Officer

# AFFIDAVIT

I, Matt Hall, a Special Agent of the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), being duly sworn, declare and state:

I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

I have been a Special Agent with Homeland Security Investigations ("HSI") since March 16, 2009. I was previously employed as a police officer and as a detective for the Indianapolis, Indiana, Police Department from October 1996 to March 2009. In connection with my official duties as a Special Agent of HSI, I am responsible for conducting investigations into violations of the United States Code and other federal criminal statutes. I have received specialized training in the enforcement of federal and immigration laws. My training and experience has involved, among other things: (a) the debriefing of defendants, witnesses, and informants who have knowledge of radicalized subjects and groups. I have received training from the Homeland Security Investigations Counter-Terrorism Section and the Federal Bureau of Investigations Joint Terrorism Task Force (JTTF) for national security and counter-terrorism related investigations. Based on my training and experience as an HSI agent and a JTTF Task Force Officer (TFO) I have become familiar with counter-terrorism investigations and the manner in which subjects radicalize themselves and others. I have conducted immigration, financial, and fraud investigations related to terrorism.

The following information is based upon my personal knowledge or information provided to me by other law enforcement personnel pertaining to Abdulmuhimn ABULSEIN. This affidavit is submitted in support of a complaint for the arrest of ABULSEIN for violation of Title 18 United States Code, Sections 1001 (making materially false statements to the Government), and 1546 (visa fraud). It does not include each and every fact known to me about the investigation, but rather only those facts that I believe are sufficient to establish the requisite probable cause.

1. Abdulmuhimn ABULSEIN (ABULSEIN) is a Libyan national. He applied for and received a student visa in Jordan in January 2015, to enter the United States for education purposes. He entered the U.S. utilizing the visa from Libya in December 2015.

2. When applying for the visa in Jordan, ABULSEIN submitted a standard form visa application under oath to the U.S. consulate in Amman, Jordan. ABULSEIN's visa application was approved by a State Department Consular Officer in material part based on what were expected to be truthful answers to the questions on the visa application.

3. Among the questions on the form visa application were:

    - "Have you belonged to, contributed to, or worked for any professional, social, or charitable organization?"

    - "Have you ever served in, been a member of, or been involved with a paramilitary unit, vigilante unit, rebel group, guerrilla group, or insurgent organization?"

    - "Have you ever been arrested or convicted for any offense or crime, even though subject of pardon, amnesty, or other similar action?"

4. ABULSEIN answered "NO" to all three of these questions.

5.  ABULSEIN has been interviewed in detail on three occasions by law enforcement since his arrival in the United States: August 31, 2016, September 9, 2016 and November 30, 2016. During those interviews, ABULSEIN provided extensive information about his personal history prior to his arrival in the United States, and he provided law enforcement access to various of his social media accounts, such as Facebook and Twitter, on his mobile phone. A summary of information ABULSEIN provided in those interviews, and information from social media, and an application for asylum he has made, are described below:

- ABULSEIN went to Jordan to obtain a student visa for travel to the United States. While in Jordan he filled out the application that is in the State Department's record for him and on which he answered "NO" to the three questions described above. His application was granted while he was in Jordan.

- After he obtained his visa, ABULSEIN returned to Libya. In April 2015, he was seriously injured by an explosion of some type. He has attributed the explosion to a rocket or missile attack near Tripoli. He said the attack was directed at him by local militias, which he actively opposed. ABULSEIN has obvious injuries including to his face that are consistent with an explosion. ABULSEIN said militias had tried to kill him on other occasions.

- ABULSEIN said his family arranged for him to fly to Turkey for medical treatment for his injuries. He was in Turkey for many weeks receiving medical treatment. Records for that treatment are part of ABULSEIN's asylum application and are consistent with injuries from an explosion.

- ABULSEIN came to the United States to study English. He variously gave schools in Miami, Florida, Cincinnati and Indianapolis as schools he had attended,

but he could not identify a school where he was currently taking classes. His Facebook page stated he is a "Visa Software Engineer" and a teaching assistant at Ohio University. ABULSEIN acknowledged these statements were not accurate. He was currently residing in Indianapolis in a boarding house type arrangement.

## ABULSEIN'S SOCIAL ACTIVISM

- ABULSEIN explained he had a relatively extensive history of social activism in Libya of various kinds. He claimed he was widely known in Libya for his social media activity.

- ABULSEIN said he was arrested and put in prison for two weeks for his opposition to Qaddafi, the president of Libya at the time. Social media ABULSEIN provided to law enforcement shows a statement on Twitter attributable to ABULSEIN stating "On 17/05/2011 I was arrested in front of the home of Gaddafi and God Brigades and I convey to you what I saw is true there were ... voices"

- ABULSEIN said he was a member of the "Justice and Construction Party," a political party in Libya (JCP). He had a membership card for this party in his possession when he was interviewed by law enforcement, and he demonstrated detailed knowledge about the party. ABULSEIN said this party is the Muslim Brotherhood's political party in Libya, which is consistent with open sources of information on this subject. He also said he spoke publicly on behalf of the JCP and the Muslim Brotherhood in Libya. Later in an interview, ABULSEIN said he was no longer active in the JCP.

- ABULSEIN said he supported "Libya Dawn" until it "turned bad." He said he had an opportunity to speak with its leaders. Your affiant knows from training and experience that Libya Dawn is a loose confederation of Islamist militias and other groups such as the Muslim Brotherhood with an active military presence in and around Tripoli for several years.

- On ABULSEIN's phone there were numerous pictures of him. A few of the pictures are of him wearing military style fatigues with others in similar dress. ABULSEIN said he was required to wear fatigues to school, but there are other similarly aged people in the picture wearing civilian dress. When asked about this incongruity, ABULSEIN said he wore military fatigues when he gave public speeches because it enhanced his image.

- On ABULSEIN's Facebook page is the picture of the symbol of "The Shura Council of Benghazi Revolutionaries" with the statement in Arabic, "God is alive men and Shura Counsel of Benghazi rebels." I know from my training and experience that the Shura Council of Benghazi Revolutionaries is an Islamist militia in Libya. When asked about this Facebook post, ABULSEIN said he supported them at one time, but then stopped supporting them when they "turned bad." ABULSEIN said someone else posted the image on his Facebook page.

- On another social media account for ABULSEIN under the name @Abduabulsain is a picture showing ABULSEIN holding an AK47 assault rifle sitting in a Toyota truck.

6. Your affiant has discussed visa rules and procedures with State Department officials.

The rules and procedures are standard throughout the world. A person seeking a visa to enter the United States fills out and submits a standard form online to a U.S. embassy where the applicant is present. A Consular Officer at the embassy reviews the application. Consular Officers invariably have extensive knowledge about the social and political climate of they region the serve in. A Consular Officer at the embassy then interviews the applicant at the embassy. If the application is not unusual, the interview typically lasts several minutes. The Consular Officer assumes the answers to the questions in the application are truthful. After the interview, the Consular Officer may make a decision themselves whether to grant or deny the application, or to do additional investigation. If there are unresolved questions about the applicant, the Consular Officer may submit the application to the Department of State in Washington D.C. for review and decision. While a "yes" answer to any one of the three questions described above might not have resulted in an immediate denial of ABULSEIN's application, it would very likely, at a minimum, have resulted in more intensive scrutiny, such as additional interview questions and investigation. In the event the Consular Officer knew the information about ABULSEIN described above, it would clearly have had the "capability of influencing the actions of the State Department" in considering the visa application.

7. Your affiant submits that this information establishes probable cause that ABULSEIN lied in his visa application in a material manner; that is, in a manner that had the capability of influencing the actions of the State Department in considering whether to grant or deny his visa application.

8. Your affiant emphasizes that the evidence described in this affidavit is not submitted to establish that ABULSEIN would have been denied a visa, but that his answers of "NO" to the three questions described here—in light of all the personal information about ABULSEIN

described here—were purposefully made to evade further scrutiny, inquiry or investigation regarding his background and visa application, which might have resulted in its eventual denial. In short, by answering "NO" to the three questions, ABULSEIN systematically hid material information about his background. For example:

- ABULSEIN answered "NO" to the question "Have you ever been arrested or convicted for any offense or crime. ..." ABULSEIN readily told law enforcement officials that he had been arrested and imprisoned for an apparent political protest. His prior social media posts corroborate that admission. Your affiant submits that ABULSEIN likely understood that a "YES" answer to that question would have the tendency to influence the decision on his visa application by inviting inquiry regarding the arrest.

- ABULSEIN answered "NO" to the question whether he "belonged to, contributed to, or worked for any professional, social or charitable organization?" ABULSEIN readily admitted to law enforcement his membership with the JCP, an established political entity in Libya directly associated with the Muslim Brotherhood. He had a membership card on his person when he was interviewed and demonstrated detailed knowledge of the party. He explained that he spoke publicly on behalf of the JCP and the Muslim Brotherhood. ABULSEIN also had some connections to Libya Dawn and the Shura Council of Benghazi Revolutionaries. Your affiant suggests that such memberships and connections are exactly the kind of information that question is designed to flesh out. Moreover, while it may be arguable whether any of these organizations in a final analysis would qualify as a

"professional, social or charitable organization," your affiant submits that ABULSEIN likely understood that a "YES" answer to that question, and disclosure of these memberships and connections, would have the tendency to influence the decision on his visa application by inviting inquiry regarding his social and political activity.

- ABULSEIN answered "NO" to the question whether he had ever been involved with a paramilitary, rebel or insurgent organization. ABULSEIN admitted he "supported" Libya Dawn, at least one aspect of which is as a rebel or insurgent organization. His social media also shows a connection with The Shura Council of Benghazi Revolutionaries, which is an Islamist paramilitary, rebel or insurgency organization. These connections are particularly significant when viewed with

    - The pictures of ABULSEIN in military fatigues;
    - A picture of him in a truck with an AK 47 assault rifle; and
    - His acknowledgement that he sustained significant injuries from a missile targeted by a militia-type group.

Your affiant suggests that such associations and connections are exactly the kind of information that question is designed to flesh out. Moreover, while it may be arguable whether any of these associations and connections in a final analysis would qualify as a "paramilitary, rebel or insurgent organization," your affiant submits that ABULSEIN likely understood that a "YES" answer to that question, and disclosure of these associations and connections, would have the tendency to influence the decision on his visa application by inviting further inquiry on these connections. In fact, your affiant submits that all these facts suggest that ABULSEIN has

continually purposefully misled the government about his associations and connections to paramilitary, rebel or insurgent organizations.

9. Conclusion

In conclusion, your affiant submits that the facts in this affidavit establish probable cause that ABULSEIN has violated the following criminal statutes, which state in pertinent part:

**18 USC 1001** (making materially false statements to the Government)

(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—

(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

(2) makes any materially false, fictitious, or fraudulent statement or representation; or

(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry [commits a crime under this section]."

**18 USC 1546** (fraud and misuse of visas, permits, and other documents)

(a) Whoever knowingly forges, counterfeits, alters, or falsely makes any immigrant or nonimmigrant visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, or utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained . . . .

Whoever knowingly makes under oath, or as permitted under penalty of perjury under section 1746 of title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact—[commits a crime under this section]."

AFFIANT FURTHER SAYETH NOT.

_____
Matt Hall, Special Agent HSI

Sworn and subscribed before me on this April day of 27, 2017.

_____
Mark J. Dinsmore, Magistrate Judge
U.S. District Court